# United States District Court
# Central District of California

| | |
|---|---|
| JENNIFER LATIFF, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NESTLÉ USA, INC.,<br><br>Defendant. | Case № 2:18-CV-06503-ODW (JPRx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE [14]** |

## I. INTRODUCTION

Presently before the Court is Defendant Nestle USA, Inc.'s ("Defendant"), Motion to Dismiss Plaintiff Jennifer Latiff's Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (Mot. to Dismiss ("Mot.") 1, ECF No. 14.) Plaintiff brings this putative class action against Defendant under FRCP 23(a), (b)(2), and (b)(3). (Compl. ¶ 34, ECF No. 1.) For the following reasons, Defendant's Motion is **DENIED**.[1]

## II. BACKGROUND

Plaintiff, a resident of Oxnard, California, alleges that she purchased "one or more" of Defendant's products labeled with its "No GMO Ingredients" seal in Oxnard

---
[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

and Ventura during the class period. (Compl. ¶¶ 20, 22–24.) Plaintiff alleges that Defendant violated the Federal Trade Commission guidelines by creating its own deceptive seal that was affixed to products which falsely represented that the product is certified as non GMO by a neutral, third party, when in fact the seal was the work of Defendant itself." (Compl. ¶ 7.) By creating its own seal that mimics the Non-GMO Project's seal, Plaintiff argues that Defendant misrepresented its products to consumers as having been certified by a neutral third party. (Compl. ¶¶ 6–8.) Furthermore, many of Defendant's products are allegedly derived from GMOs. (Compl. ¶ 12.) Defendant's "No GMO Ingredients" seal allegedly violates the Non-GMO Project standard, which prohibits use of its seal on "products that could be from animals fed GMO feed." (Compl. ¶ 12.) As a result, Plaintiff argues that Defendant averts the Non-GMO Project's strict standard by using its self-created seal. (Compl. ¶ 13.)

On July 27, 2018, Plaintiff initiated this action, individually and on behalf of the class, against Defendant for violating the California Unfair Competition Law, California False Advertising Law, and California Consumers Legal Remedies Act. (*See generally* Compl.)

### III. LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal under a 12(b)(6) motion can be based on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To overcome a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (internal citations and quotation marks omitted). A court "may not supply essential elements of the claim that were not initially [pleaded]." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). A liberal reading cannot cure the absence of such facts. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

When considering a 12(b)(6) motion, a court is generally limited to considering material within the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. DISCUSSION

In addition to Defendant's Motion to Dismiss, Defendant requests that the Court take judicial notice of several documents. (*See generally* Req. for Judicial Notice ("RJN"), ECF No. 15.) Accordingly, the Court will address whether judicial notice is appropriate before turning to the merits of Defendant's Motion to Dismiss.

### A. REQUEST FOR JUDICIAL NOTICE

Although a court is generally limited to the pleadings in ruling on a Rule 12(b)(6) motion, it may consider documents incorporated by reference in the complaint or properly subject to judicial notice without converting the motion into one for summary judgment. *Lee*, 250 F.3d at 688–89. Federal Rule of Evidence 201 provides: "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice of government documents and public records. *See Peruta v. Cty. of San Diego*, 678 F. Supp. 2d 1046, 1054 n.8 (S.D. Cal. 2010) (stating that courts may properly take judicial notice of undisputed documents appearing on governmental websites).

In support of its Motion to Dismiss, Defendant requests that the Court take judicial notice of the following exhibits attached to the Declaration of Dale J. Giali, pursuant to Federal Rule of Evidence 201:

- (A) Photographs of the packaging-label for Coffee-mate Natural Bliss® Sweet Cream;
- (B) Photograph of the packaging-label for Buitoni® Chicken Prosciutto Tortelloni;
- (C) Photographs of the packaging-label for Lean Cuisine® Marketplace Ricotta Cheese & Spinach Ravioli;
- (D) Screenshot of the "Non-GMO Project Verified" seal;
- (E) Screenshot of Defendant's "No GMO Ingredients" seal;
- (F) Excerpts from the SGS website, entitled "The SGS No GE Ingredients Supply Chain Process Verification Standard (US Version)," available at http://sgs.com/no-gmo;
- (G) Excerpts from the Non-GMO Project's website, entitled "Verification FAQs," available at http://www.nongmoproject.org; and
- (H) Copy from the Vermont Office of the Attorney General William H. Sorrell website, entitled "Certification, Verification & Known GE Crops," published April 7, 2016.

Courts may take judicial notice of "matters of public record" under Fed. R. Evid. 201. *Lee*, 250 F.3d at 689 (9th Cir. 2001). However, the matters must not be "subject to reasonable dispute." *Id.* at 689.

Exhibits A to H are matters of public records because they are either accessible online or are on product labels that are publicly sold. Since these exhibits are from a government website or public record, these matters are not subject to reasonable dispute. Accordingly, Exhibits A to H are properly subject to judicial notice. With this in mind, Defendant's request for judicial notice is **GRANTED**.

## B. STANDING

The standing doctrine "serv[es] to identify those disputes which are appropriately resolved through the judicial process." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 145, 155 (1990)). Plaintiff bears the burden of establishing standing under Article III by meeting the following three elements. First, by relying on Defendant's misrepresented statements, plaintiff must have suffered a cognizable "injury in fact." *Id.* at 560–61. Second, there must be a causal connection between the conduct complained of and the injury. *Id.* Lastly, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*

Here, Defendant argues that Plaintiff does not have standing to pursue injunctive relief because she has not met the first element. Specifically, Defendant alleges that Plaintiff cannot "demonstrate a real and immediate threat of repeated injury in the future" required under Article III. (Mot. 14 (citing *Gallagher v. Chipotle*, No. 15-cv-03952-HSG, 2016 WL 454083, at *3 (N.D. Cal. Feb. 5, 2016).) However, the Ninth Circuit has previously held that injury-in-fact is met when consumers suffer an economic injury as a result of false advertising claims, specifically noting that: "[C]onsumers suffer an 'injury-in-fact' for Article III purposes when, as a result of false advertising, they purchase a product 'when they otherwise would not have done so.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012).

Plaintiff claims that she and members of the Class would not have purchased a product bearing the "No GMO Ingredients" seal had they known that Defendant was using misleading labels. (Compl. ¶ 38.) "When given a choice between comparable

products, Plaintiff purposefully chooses non-GMO products verified by an independent third-party when making purchasing decisions and relies on packaging representations to determine if products are certified as non-GMO by independent third parties." (Compl. ¶ 25.) Since Plaintiff alleges that she relied on Defendant's label, thereby paying higher market prices than she would have otherwise paid, Plaintiff has standing. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 563 (C.D. Cal. 2014) (holding that plaintiffs had standing because they paid higher market prices than they would have otherwise paid for defendant's deceptively labeled products). Accordingly, Plaintiff sufficiently alleges standing.

### C. UNFAIR COMPETITION (FIRST CAUSE OF ACTION)

Plaintiff alleges that "Defendant designed the false, misleading and deceptive No GMO Ingredients label with the intent to sell, distribute and increase the consumption of its Products bearing the No GMO Ingredients label." (Compl. ¶ 46.) Plaintiff further alleges that Defendant's business acts and practices are unlawful under the California Consumers Legal Remedy Act ("CLRA"), California Civil Code section 1750, *et seq.* (Compl. ¶ 49.)

"In general, to bring a CLRA claim, the plaintiff must show that: (1) the defendant's conduct was deceptive; and (2) that the deception caused [plaintiff] to be harmed." *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015). In the class context, a CLRA claim "requires each class member to have an actual injury caused by the unlawful practice." *Id.*

Here, Plaintiff alleges that the Defendant's No GMO Ingredients seal impersonates the Non-GMO Project seal, and is misleading and deceptive to consumers. (Compl. ¶ 46.) Regardless of any aesthetic similarities between the logos, the Non-GMO Project seal is held to different standards than Defendant's No GMO seal. By using a seal similar to the Non-GMO Project's seal, Plaintiff argues that Defendant creates consumer confusion because Defendant's standards are "far less than" those required to earn the legitimate Non-GMO's seal. (Opp'n to Mot. ("Opp'n) 9, ECF No.

20.) "Defendant avoids the Non-GMO Project's feed standard by using its own, self-created No GMO Ingredients seal, thereby creating confusion and deceiving consumers." (Compl. ¶ 13.) Given that Plaintiff deliberately selected and purchased purported non-GMO products from among comparable products, Plaintiff has alleged that she suffered harm by relying on Defendant's misleading seal in purchasing its products. (Compl. ¶ 26.) Accordingly, Plaintiff has sufficiently stated a claim as to this cause of action.

### D. FALSE ADVERTISING (SECOND CAUSE OF ACTION)

Plaintiff alleges that Defendant "misleadingly and deceptively represents that the Products were validated by an independent third-party, when, in fact, they were not." (Compl. ¶ 7.) "These materials misrepresented and/or omitted the true nature and quality of No GMO Ingredients Products." (Compl. ¶ 56.)

California's False Advertising Law outlaws the making or dissemination of any statement concerning property or services that is "untrue or misleading." Cal. Bus. & Prof. Code § 17500. "Whether an advertisement is misleading is determined by asking whether a reasonable consumer would likely be deceived." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867–68 (9th Cir. 2018). However, in a false advertising case, the advertisement itself is the primary evidence to determine whether the advertisement is misleading. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Plaintiff alleges that Defendant's No GMO Ingredients Label is deceptive when "ingredients in many of [Defendant's] Products are derived from GMOs. For example, Defendant's Products containing milk come from cows fed with GMO grains." (Mot. 9.) These products would not qualify for the Non-GMO Project's seal. As such, if products are made with milk from animals fed with GMO feed and contains a No GMO Ingredients Label, it is plausible that consumers would be misled. *See Bohac v. Gen. Mills, Inc.*, No. 3:12-cv-05280-WHO, 2014 WL 1266848, at *12 (N.D. Cal. Mar. 26, 2014) (holding that terms containing "natural" can mislead consumers when describing products that contain GMOs or other highly processed ingredients). Lastly,

although Defendant asserts that its seal is third-party verified, Defendant's seal could be misleading because the seal does not reflect the third-party verifier, and as alleged, was Defendant's own creation. (Mot. 12–13; Compl. ¶ 7.)

In sum, Plaintiff has adequately alleged that Defendant's No GMO Ingredients Label could deceive a reasonable consumer, and Plaintiff has sufficiently stated a claim as to this cause of action.

E. **CONSUMERS LEGAL REMEDIES ACT (THIRD CAUSE OF ACTION)**

Under the CLRA, a reasonable consumer is not expected to know how to inspect or judge a product or know the process of the products' preparation or manufacture. *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 885 (C.D. Cal. 2013). Accordingly, the CLRA is "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.*

Plaintiff alleges that Defendant violated and continues to violate the CLRA. Specifically, Plaintiff alleges that Defendant violated California Civil Code sections 1770(a)(2), (7), and (16). (Compl. ¶¶ 66–68.) Section 1770(a)(2) prohibits the unlawful act of "misrepresenting the source, sponsorship, approval, or certification of goods or services." Cal. Civ. Code § 1770(a)(2). Section 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and section 1770(a)(16) bans "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code § 1770(a)(7), (16).

Here, Plaintiff alleges that Defendant misrepresented the character and quality of its No GMO Ingredients Label. For the reasons previously provided, Plaintiff has sufficiently stated a claim under CLRA. *See Malone v. CarMax Auto Superstores California, LLC*, No. 2:14-cv-08978-JAK, 2015 WL 3889157, at *9 (C.D. Cal. June 23,

2015) (denying motion to dismiss on California Civil Code section 1770(a) because plaintiff alleged that defendant failed to disclose certain product defects).

Accordingly, Plaintiff has sufficiently alleged a claim under the CLRA.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**. (ECF. No. 14)

**IT IS SO ORDERED.**

September 19, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**